UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORNELL SMITH,

        Plaintiff,

      v.                               Case No. 21-C-242

MR. FOSTER, et al.,

        Defendants.

## SCREENING ORDER

Plaintiff Cornell Smith is representing himself in this §1983 action. On April 2, 2021, the Court dismissed Smith's complaint for violating Rules 8, 18, and 20 of the Federal Rules of Civil Procedure and gave him an opportunity to file an amended complaint, which he did about a month later on April 30, 2021. Dkt. Nos. 8, 9. On June 3, 2021, the Court allowed Smith to file a second amended complaint. Dkt. Nos. 14, 15. The Court screened Smith's second amended complaint a few weeks later and concluded that it also violated Rules 18 and 20 and that none of the unrelated claims he sought to assert were adequately pled. Dkt. No. 20. The Court gave Smith one final opportunity to amend his pleading. The Court reminded him that he must not include unrelated claims against unrelated sets of defendants.

On July 23, 2021, Smith filed a third amended complaint. Dkt. No. 21. A few days later, he filed a motion for reconsideration. Dkt. No. 22. In his motion, he asks the Court to reconsider its conclusion that his second amended complaint violates Rules 18 and 20. Smith explains that all of the nearly twenty defendants he sued "are connected in this crime." *Id.* He states there was confusion on that point because he had to handwrite his second amended complaint rather than

type it. Smith's third amended complaint takes the place of his second amended complaint, so the Court will deny his motion for reconsideration as moot and will screen the third the amended complaint.

SCREENING OF THE THIRD AMENDED COMPLAINT

By now, the screening standard is familiar to Smith. As the Court previously explained, to state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Further, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607. And, under Rule 20, the joinder of multiple defendants into one action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. Finally, under Rule 21, "the court may at any time, on just terms, . . . drop a party" that is improperly joined in an action.

ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

In 2013, Smith filed Case No. 13-cv-600-wmc in the Western District of Wisconsin. Smith alleges that Defendant Pollard ordered all prison officials and prison staff[] to do whatever, necessary to[] stop the plaintiff Smith lawsuit." Dkt. No. 21 at 3. According to Smith, in 2014

2

through 2016, he received three conduct reports. Smith states that none of these conduct reports had merit and were given to him because of Pollard's order. He asserts that he did not receive due process hearings or safeguards. After being found guilty, Smith asserts that he lost recreation time, his prison job, and canteen privileges. *Id.* at 3-4. Sometime in 2016 or 2017, Defendant Foster replaced Pollard. The order to stop Smith's lawsuit "was pass[ed] down to [Foster] to enforce." *Id.* at 4. From 2017 to 2019, like Pollard, Foster allegedly ordered staff "to do whatever, necessary to stop the plaintiff Smith lawsuit." *Id.*

Smith alleges that, on July 2, 2017, Defendant Sanchez released another inmate from his cell. The inmate allegedly attacked Smith two times that day. Smith asserts that, during the second attack, Sanchez stood and watched for about two minutes before he hit his panic button and commanded Smith and the other inmate to stop fighting. According to Smith, he was then bum-rushed by numerous prison staff members, who forcibly bent him over the range railing. He asserts that he was not resisting. Smith states that Defendant O'Nell sprayed him with pepper spray "in order[] to heighten the incident." *Id.* at 5. According to Smith, a Jane Doe nurse refused to provide him with any medical care. *Id.* at 6.

Smith explains that he declined to file charges against the inmate and was later informed that he was being charged with assault. According to Smith, Sanchez wrote him a conduct report. Smith states that Sanchez did not explain why he released the other inmate. On July 20, 2017, Defendant Westra allegedly found Smith guilty of the conduct report after a major conduct report hearing. Smith asserts that he appealed the decision to Foster. Smith alleges that Foster and Westra delayed providing Smith with the decision and engaged an inmate snitch to gather information about Smith. Smith asserts that the scheme failed because he knew the inmate was a

3

snitch.  Smith allegedly received Foster's final decision in September 2017.  He received 60 days of disciplinary segregation.  *Id.* at 6-7.

Beginning in July or August 2017, Foster ordered prison staff "to do whatever, necessary to stop" Smith from filing his current lawsuit (which Smith did not file until more than three years later on February 22, 2021).  Smith states that his requests for a haircut and shave were denied in order to provoke a violent response and his requests for legal forms went unanswered. Smith also asserts that he was deprived of his right to privacy and any information he received was viewable by prison staff.  Smith states that this too was done to provoke a violent response.  *Id.*

In April through September 2018, Smith was hired to work as a tier tender.  Smith states that sometime in September he was ordered to lock in to his cell.  According to Smith, he complied. The next day, Smith was issued a conduct report for being in an unassigned area.  He asserts that he was found guilty and lost his television privileges for a week and lost his job.  Foster allegedly affirmed the decision.  *Id.* at 8.

In September or October 2018, Smith asserts that Defendants Foster, Peterson, and Marwitz plotted to have Smith double-celled with an inmate in order to provoke a dangerous situation.  Defendants Griffith and Vanburne allegedly provided Foster with confidential medical documents.  Smith asserts that his single-cell restriction, which he has had for decades, was removed without a medical examination or physical.  *Id.* at 8-9.

Smith alleges that Foster eventually passed this conspiracy to Defendant Hepp, who then ordered others to do whatever necessary to stop Smith from filing a lawsuit.  In response, Defendant Krollman made false accusations about Smith trying to smuggle in narcotics and tried to close a sallyport door on him.  *Id.* at 9-10.

4

## THE COURT'S ANALYSIS

Smith's third amended complaint, like his original and second amended complaints, violates Rules 18 and 20 because it advances unrelated claims against different sets of defendants. As he did previously, Smith attempts to link unrelated incidents that occurred over the course of nearly a decade by asserting that three different wardens ordered all staff members to "do whatever necessary" to stop Smith from pursuing lawsuits. Smith's allegations of a ten-year conspiracy involving three different wardens is too far-fetched and conclusory to state a claim. Smith alleges no facts from which the Court can reasonably infer that Pollard, Foster, and Hepp were even aware of his lawsuits or intentions to file lawsuits, let alone that every adverse action that Smith allegedly experienced was in response to the wardens' vague orders. Because Smith fails to state a conspiracy claim, he fails to connect the many unrelated claims he asserts and therefore cannot pursue them all in one case.

As noted, under Rule 21, the Court "may at any time, on just terms, . . . drop a party" that is improperly joined in an action. The Court will dismiss all defendants except for those involved in the July 2, 2017 incident. If Smith wants to pursue claims unrelated to the July 2, 2017 incident, he must do so in separate cases. The Court reminds Smith that he will be required to pay the filing fee for every new case he brings.

As to the July 2, 2017 incident, the Court will allow Smith to proceed on Eighth Amendment claims against Sanchez and O'Nell based on Smith's allegations that Sanchez stood and watched him and another inmate fight for two minutes before intervening and that O'Nell sprayed him with pepper spray even though he was following orders and not resisting. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (holding that the

5

"core judicial inquiry" on an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

Smith also states an Eighth Amendment claim against the Jane Doe nurse who allegedly refused to provide him with medical care after he was attacked by another inmate and sprayed with pepper spray. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (the Court asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition"). Because Smith does not know the nurse's name, he will have to use discovery to learn her name. Smith may not serve discovery requests until after the named Defendants have an opportunity to respond to his third amended complaint and after the Court enters a scheduling order setting deadlines for the completion of discovery and the filing of dispositive motions.

Smith does not, however, state a due process claim against Westra, the hearing officer who allegedly found him guilty of assault, or warden Foster, who approved Westra's decision. Smith alleges nothing to suggest that the conditions of his confinement were significantly altered during his stay in segregation and his relatively short sentence of sixty days is "not so atypical and significant as to constitute a deprivation of a liberty interest, and thereby fail[s] to trigger procedural due process protections." *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005).

Finally, in his request for relief, Smith "seeks an appointment of an attorney." Dkt. No. 21 at 15. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013). In exercising its discretion, the Court must first consider whether a plaintiff has made a reasonable attempt to obtain counsel without the Court's involvement. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). A plaintiff can satisfy this requirement by providing the Court with the names and contact information of at

6

least three lawyers he has contacted, how and when the plaintiff contacted the lawyers, and the lawyers' responses. Because Smith has not provided the Court with this information, the Court will deny his request that it recruit a lawyer to represent him.

**IT IS THEREFORE ORDERED** that Smith's motion for reconsideration (Dkt. No. 22) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Foster, Westra, Moon, Webster, Clements, Petterson, Marwitz, Griffith, Vanburne, Blake, Gau, McQuown, Sabish, Pollard, Raemischer, Krollman, Hepp, and all but one of the Jane Doe Defendants are **DISMISSED** based on Smith's failure to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Smith's third amended complaint (Dkt. No. 21) and this order are being electronically sent today to the Wisconsin Department of Justice for service on Sanchez and O'Nell.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Sanchez and O'Nell shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Green Bay, Wisconsin this 24th day of August, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge