UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORNELL SMITH,

        Plaintiff,

    v.                                      Case No. 21-C-242

NICHOLAS SANCHEZ,

        Defendant.

## DECISION AND ORDER

Plaintiff Cornell Smith, a prisoner at Waupun Correctional Institution who is representing himself, is proceeding on an Eighth Amendment failure-to-protect claim against Defendant Nicholas Sanchez based on assertions that he allowed an inmate out of his cell and then watched for several minutes as the inmate attacked Smith.[1] On June 3, 2022, Smith moved for summary judgment, and on June 21, 2022, Defendant moved for summary judgment. The Court will deny Smith's motion, grant Defendant's motion, and dismiss this case.

### BACKGROUND

At the relevant time, Smith was an inmate at Waupun Correctional Institution, where Sanchez worked as a correctional sergeant. On July 2, 2017, Sanchez was stationed in the sergeant's cage, which is an area at the front of the unit from which officers can control all doors, view security cameras, handle equipment inventory, and answer emergency calls from inmates.

---

[1] Smith purports to raise numerous other claims in his response to Defendant's summary judgment motion, but his arguments are irrelevant to the claim at issue in this case, so the Court will not address them in this decision. *See Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011) ("It is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion." (citations omitted)).

One staff member is required to be stationed in the sergeant's cage at all times. That day, Smith, who was working as a tier tender, was moving the phones down the range for inmate phone calls. Inmate Dontrell Leflore tried to convince Smith to let him use the telephone first, but Smith refused and told him to wait his turn. Dkt. No. 81 at ¶2; Dkt. No. 90 at ¶¶1-2, 4-5, 9.

Smith walked away to retrieve some cleaning supplies. During that time, Defendant opened Leflore's cell door because he needed to talk to him. Leflore was supposed to walk to the sergeant's cage to talk to Defendant. Because Leflore was in general population, it was consistent with prison policy to let him out of his cell unescorted. When Smith returned with the cleaning supplies, Leflore pulled Smith into his cell and began to attack him by punching his head, face, and ribs and squeezing his genitals. Smith fought back and was able to knock Leflore unconscious. Smith then exited Leflore's cell and looked down to see Defendant reading something in the sergeant's cage. Defendant did not know that Leflore had attacked Smith. According to Smith, Leflore then exited his cell half naked and began to chase Smith. Defendant looked up when he heard the commotion and yelled, "Where are you going?" Smith, followed by Leflore, ran down the stairs. Smith asserts that Leflore pushed him into the metal food cart and then began beating Smith with closed fists for about two minutes. Dkt. No. 81 at ¶¶3-8; Dkt. No. 90 at ¶¶10-12, 28.

Defendant asserts that as soon as he noticed Smith and Leflore running down the stairs, he contacted backup via the institution radio, yelling "Fight north cell hall." According to Defendant, officers were able to respond within seconds, but Smith asserts that Leflore attacked him for several minutes before officers intervened. Defendant explains that, consistent with his training, he remained in the sergeant's cage during the incident to control the entrance for responding staff, verify if any other inmates were in the area, and to make sure other inmates returned to their cells to avoid further disruption. Multiple officers directed Smith and Leflore to stop fighting, but when

2

that was not effective, an officer pepper-sprayed Smith. The inmates stopped fighting and were separated. Dkt. No. 81 at ¶¶8-10; Dkt. No. 90 at ¶¶13-16, 20.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087-88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Smith asserts that Defendant failed to protect him when he let Leflore out of his cell and delayed calling for help once he observed Leflore attacking Smith. Prison officials have a duty under the Eighth Amendment to protect inmates from violence caused by other inmates when they are aware that the inmate faces "a substantial risk of serious harm" and "disregard that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Pierson v. Hartley*, 391 F.3d 898, 903-04 (7th Cir. 2004).

With regard to Defendant's decision to let Leflore out of his cell, Defendant explains that Leflore was in general population and so policy permitted Leflore to be released from his cell unescorted. Defendant explains that Leflore was to report to the sergeant's cage so Defendant could speak with him. Defendant asserts that he was unaware of any animosity between Smith and Leflore and had no reason to believe that Leflore would attack Smith when Defendant released Leflore from his cell. Dkt. No. 90 at ¶30. Smith presents no evidence rebutting Defendant's assertions. Smith did not inform anyone of his disagreement with Leflore over his request to use the telephone and Smith concedes that he was surprised by Leflore's attack. Given that Defendant was not aware that Leflore posed a substantial risk of harm to Smith when he released Leflore from his cell, his decision to do so did not violate the Eighth Amendment. Defendant is entitled to summary judgment on this aspect of Smith's claim.

Moreover, no jury could reasonably conclude that Defendant disregarded the risk Leflore posed to Smith after he noticed Leflore chasing him. Defendant asserts that as soon he noticed Leflore chasing Smith down the stairs, he pressed the emergency alarm button on his radio, which he was wearing on his person, and yelled, "Fight north cell hall." *Id.* at ¶¶8, 13. Defendant explains that, per policy and for security reasons, he stayed in the sergeant's cage to control the door through which responding officers would be entering and to keep an eye on other inmates to avoid further potential disruption. *Id.* at ¶21. Accordingly, the *only* action Defendant could take to protect Smith from Leflore's attack was to radio for help, which he asserts he did immediately upon seeing Leflore chasing Smith.

Smith fails to create a triable issue regarding Defendant's response. He speculates that Defendant must have delayed pressing his emergency button because officers did not immediately intervene to stop Leflore's assault, but Defendant had no control over the speed with which officers responded to his call for help. He had control only over the speed with which he radioed for help,

4

and he states that he did that immediately. Smith, who was running down the stairs and fending off a violent assault after being pushed into a food cart, Dkt. No. 81 at ¶¶6-7, could not have observed every action taken by Defendant, who was standing ten yards away in a secured space surrounded by steel bars, Dkt. No. 90 at ¶¶3, 15. Accordingly, Smith's assumption about how long Defendant waited before radioing for help is insufficient to rebut Defendant's sworn statement that he pressed his emergency button immediately upon realizing Smith was in danger. *See Lavite v. Duntstan*, 932 F.3d 1020, 1029 (7th Cir. 2019) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion" (citations omitted)). Because the record demonstrates that Defendant immediately radioed for help, the only conclusion a reasonable jury could reach is that Defendant took reasonable measures to abate the risk Smith faced. Defendant is entitled to summary judgment.

Finally, the Court will deny Smith's motion to exclude Defendant's evidence. Dkt. No. 107. Smith accuses Defendant of manufacturing evidence and conspiring with current and former wardens of his institution, but Smith provides no evidence to support his accusations.

## CONCLUSION

For these reasons, Smith's motion for summary judgment (Dkt. No. 78) and his motion to exclude Defendant's evidence (Dkt. No. 107) are **DENIED**. Defendant's motion for summary judgment (Dkt. No. 88) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.